IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDA G. ADAMS, Independent Administrator of the Estate of JAMES E. ADAMS, deceased,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 07-497-GPM-DGW<br>)<br>)<br>)<br>) |

## ANSWERS AND OBJECTIONS TO PLAINTIFF'S RULE 36 REQUEST TO ADMIT

Defendant ALZA Corporation ("ALZA"), through its undersigned counsel, states as follows for its Answers and Objections to Plaintiff's Rule 36 Request to Admit:

### GENERAL STATEMENT AND OBJECTIONS

The following general statement and objections are made to each request for admission whether or not specifically referred to in each response:

1. These responses reflect only the current state of ALZA's understanding and belief respecting the matters upon which inquiry was made. Discovery and investigation of the allegations asserted in Plaintiff's Complaint and ALZA's separate defenses are continuing. As discovery in this action proceeds, further facts may be discovered by ALZA. These responses are given without prejudice to using or relying on subsequently discovered information or information omitted from this response through a mistake, error or oversight.

2. ALZA objects to each and every one of Plaintiff's request for admission to the extent that they seek to impose obligations upon ALZA in excess of those contained in applicable statutes, civil rules, or case law.

Exhibit 17

3. ALZA objects to each and every request for admission herein to the extent that they seek information or documents pertaining to any conduct or activity of ALZA or any reports or provision of information to ALZA subsequent to the date of the alleged adverse experience suffered by Plaintiff's decedent and described in Plaintiff's Complaint. ALZA's objections to such requests are based, inter alia, on the grounds that such information is not relevant or material to any issue in this lawsuit, and further that it is not reasonably calculated to lead to production of information relevant or material to any issue in this lawsuit.

4. ALZA objects to drawing any inference from any portion of either Plaintiff's requests for admission or these responses that the information requested or events referred to actually exist or occurred. The failure of ALZA to object to each such inference in no way constitutes an admission by Defendants that such information exists or that such events actually occurred.

5. ALZA objects to these requests for admission, individually and generally, because they are overly broad, vague, unduly burdensome, oppressive, and are not reasonably calculated to lead to the discovery of relevant or admissible evidence.

6. ALZA's investigation, discovery, and trial preparation is ongoing. ALZA reserves the right to amend, modify, or supplement these objections and the responses as additional information becomes available.

7. ALZA's decisions, now or in the future, to provide information notwithstanding the objectionable nature of any of the requests for admission should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of ALZA's General Objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

8. ALZA incorporates each of these General Objections into each of its responses below.

Exhibit 17

## ANSWERS TO REQUESTS FOR ADMISSIONS

1. That Alza Corporation manufactures the 75 mcg/h Duragesic fentanyl transdermal system.

**ANSWER:**

ALZA admits that at all times relevant to Plaintiff's Complaint, it manufactured Duragesic® 75 mcg/hr transdermal patches.

2. The 75 mcg/h Duragesic fentanyl transdermal system is designed and manufactured to provide a continuous systemic delivery of fentanyl, a potent opioid analgesic for 72 hours.

**ANSWER:**

ALZA admits that Duragesic® – including the 75 mcg/hr patches – is designed and manufactured to deliver fentanyl, a potent opioid analgesic, to the patient at a controlled rate over a 72-hour period. ALZA denies the remaining allegations contained in this Request.

3. That on Monday, April 25, 2005, Dr. John O. Grimm, wrote a prescription for James Adams to receive five 75 mcg/h fentanyl patches.

**ANSWER:**

ALZA admits the allegations contained in Request for Admission No. 3.

4. That on Monday, April 25, 2005, pursuant to the prescription, James Adams received a carton from the CVS Pharmacy in Lawrenceville, Illinois that contained five Duragesic 75 mcg/h patches with one patch to be used every 3 days.

**ANSWER:**

ALZA admits the allegations contained in Request for Admission No. 4.

Exhibit 17

5.      As sold, each Duragesic 75 mcg/h patch in the carton is individually contained in a sealed pouch.

**ANSWER:**

**Objection.** Request for Admission No. 5 is vague and ambiguous as to the meaning of "as sold." Subject to and without waiting the foregoing objection, ALZA admits that after manufacturing, Duragesic® patches are sealed in individual pouches and placed in boxes until removed and placed on the skin of the patient. ALZA denies the remaining allegations contained in this Request.

6.      That on Monday, April 25, 2005, Linda Adams removed a patch from the carton and placed a Duragesic 75 mcg/h patch on the sacral area of James Adams' back.

**ANSWER:**

ALZA admits the allegations contained in Request for Admission No. 6.

7.      That the application of a 75 mcg/h Duragesic patch to the sacral area for 72 hours is an expected and foreseeable use.

**ANSWER:**

Request for Admission No. 7 is vague and ambiguous as to the meaning of "expected and foreseeable use." Subject to and without waiving the foregoing objection, ALZA admits that the package insert provides that Duragesic® "should be applied to intact, non-irritated and non-irradiated skin on a flat surface such as the chest, back, flank, or upper arm" and that each patch is designed to be worn for a seventy-two (72) hour application period. ALZA denies the remaining allegations as application of Duragesic® to the sacral area is not specifically listed as an acceptable application site.

8.      That on Thursday, April 28, 2005, Linda Adams removed the Duragesic 75 mcg/h patch from James Adams' sacral area. She then took a second patch from the carton and placed a Duragesic 75 mcg/h patch on James Adams' scapular area.

**ANSWER:**

ALZA admits the allegations contained in Request for Admission No. 8.

Exhibit 17

9. That the application of a 75 mcg/h Duragesic patch to the scapular area for 72 hours is an expected and foreseeable use.

**ANSWER:**

**Objection.** Request for Admission No. 9 is vague and ambiguous as to the meaning of "expected and foreseeable use." Subject to and without waiving the foregoing objection, ALZA admits that the package insert provides that Duragesic® should be applied to intact, non-irritated and non-irradiated skin on a flat surface such as the chest, back, flank, or upper arm" and that each patch is designed to be worn for a seventy-two (72) hour application period.

10. That according to the package insert, the mean or average fentanyl blood concentration following the first 72 hour application for a living person properly using a Duragesic 75 mcg/h patch is 1.7 ng/ml with a standard deviation of 0.7 ng/ml.

**ANSWER:**

ALZA admits that the relevant package insert for Duragesic® observed a mean maximal fentanyl concentration following the first seventy-two (72)-hour application of 1.7 ng/ml with a standard deviation of 0.7 ng/ml. ALZA denies the remaining allegations contained in this Request.

11. Fentanyl is a very strong opioid medicine that can cause serious and life-threatening breathing problems. Serious and life-threatening breathing problems may result from receiving too much fentanyl.

**ANSWER:**

**Objection.** Request for Admission No. 11 is vague and ambiguous as to the meaning of "very strong," "serious and life threatening breathing problems," and "too much fentanyl." Subject to and without waiving the foregoing objection, ALZA admits that fentanyl is a potent opioid and a known risk associated with the use of any opioid is serious or life-threatening hypoventilation as is indicated in the package insert. ALZA further admits that as indicated in the package insert, hypoventilation can occur due to fentanyl overdose. ALZA denies the remaining allegations in this Request.

Exhibit 17

12. James Adams died on April 29, 2005.

**ANSWER:**

ALZA admits the allegations contained in Request for Admission No. 12.

13. A toxicology report from blood drawn from the superficial neck veins after James Adams' death showed that he had a post-mortem fentanyl blood level of 12.2 ng/ml.

**ANSWER:**

ALZA denies the allegations contained in Request for Admission No. 13.

14. That as designed and manufactured, a properly used 75 mcg/h Duragesic patch is not expected to provide a 12.2 ng/ml fentanyl blood level in a living person within the first two applications.

**ANSWER:**

**Objection.** Request for Admission No. 14 is vague and ambiguous as to the meaning of "properly used" and "not expected." Subject to and without waiving the foregoing objection, ALZA denies the allegations contained in Request No. 14. The relevant package insert for Duragesic® provides that the anticipated serum fentanyl concentration in a living person varies from patient to patient due to "individual variation in skin permeability and body clearance of fentanyl." Furthermore, ALZA denies that Decedent's post-mortem 12.2 ng/ml fentanyl concentration accurately reflects the fentanyl concentration in Decedent's bloodstream before his death.

Exhibit 17

15. Attached hereto as Exhibit A, is a true and accurate duplicate copy of Dr. James M. Jacobi's autopsy report concerning James Adams that was made at or near the time of his autopsy; the autopsy report is kept in the regular course of business of Dr. Jacobi, and the autopsy report was made in the regular course of business by Dr. Jacobi who has knowledge of the of the act, events or descriptions included in the autopsy.

**ANSWER:**

ALZA admits the allegations contained in Request No. 15 with respect to pages 1-8 of Exhibit A. ALZA denies the allegations with respect to pages 9-12 because they constitute a toxicology report prepared by AIT Laboratories, an independent laboratory located in Indianapolis, Indiana.

Dated: September 26, 2008        By:    /s/ Robert H. Shultz, Jr.
                                        HEYL, ROYSTER, VOELKER & ALLEN
                                        Robert H. Shultz, Jr. - #03122739
                                        105 West Vandalia Street, Suite 100
                                        Edwardsville, Illinois 62025
                                        Telephone: (618) 656-4646

                                        Ernest W. Auciello
                                        TUCKER, ELLIS & WEST, LLP
                                        1150 Huntington Building
                                        925 Euclid Avenue
                                        Cleveland, Ohio 44115
                                        Telephone: (216) 696-4362

**PROOF OF SERVICE**

The undersigned certifies that on **September 26, 2008**, a copy of the foregoing was electronically filed with the Clerk of the Court for the Southern District of Illinois using the CM/ECF system, which will send notification of such filing to the following:

Jon G. Carlson – jcarlson@mcleodusa.net
Eric J. Carlson – ecarlson@mcleodusa.net
Mark D. Hassakis - mhass@hassakislaw.com

                                        /s/ Robert H. Shultz, Jr.
                                        HEYL, ROYSTER, VOELKER & ALLEN

Exhibit 17