MICHAEL W. KAUFMAN, M.D., LTD.
Department of Pathology
Evanston Hospital
2650 Ridge Avenue
Evanston, Illinois 60201-1783
—
(847) 570-2753
Fax (847) 570-2927

OCT 17 2008

October 12, 2008

Mr. Eric J. Carlson
Attorney at Law
Carlson & Carlson, P.C.
P.O. Box 527
#90 Edwardsville Professional Park
Edwardsville, Illinois 62025

Re: James E. Adams

Dear Mr. Carlson;

Thank you for consulting with me on the above medical-legal case. I have received and reviewed the following materials:

1. Chronology of patient illness
2. Death certificate
3. Autopsy report and toxicology report
4. Lawrence County Memorial Hospital records dated 4/29/05
5. LCMH ambulance - April 29, 2005
6. LCMH blood tests from April 29, 2005
7. Pharmacy records
8. Medical records of Dr. John Grimm
9. Willow Creek Pain Center records
10. Rural Health Clinic medical records
11. Vincennes Orthopedics Surgery Clinic records
12. LCMH physical therapy records
13. LCMH admission of January 21, 2005
14. LCMH admission of January 23, 2005
15. LCMH admission of January 28, 2005
16. Medical record of Dr. Jerrold Leikin of August 26, 2008
17. Deposition of Linda Adams
18. Deposition of Dr. John Grimm
19. Deposition of Dr. James Jacobi
20. Autopsy slides of James Adams

All opinions rendered in this report are given to a reasonable degree of medical and pathologic certainty. They are based upon review of the above records, as well as upon my education, training and experience in the field of anatomic pathology and particularly in the fields of autopsy pathology and toxicology over the past 36 years. I have experience in the issues involved in this case. To my knowledge, I have never been barred from a court of law from testifying in the areas of my medical expertise.

Exhibit 23

MICHAEL W. KAUFMAN, M.D., LTD.
Department of Pathology
Evanston Hospital
2650 Ridge Avenue
Evanston, Illinois 60201-1783
—
(847) 570-2753
Fax (847) 570-2927

Carlson - 2

In brief summary, Mr. James E. Adams, date of birth January 26, 1957, sustained a job related injury on January 21, 2005, in which he was injured by an interaction with a cow in which his back was injured. He was under a physician's care for this injury and he required multiple medications for the back pain from which he suffered. He was started on a Fentanyl patch (Duragesic) 75 microgram transdermal patch, with the first patch applied on Monday, April 25, 2005. The first patch was removed on Thursday, April 28 and a new patch was put on. Mr. Adams was found suddenly and unexpectly dead by his wife the morning of Friday, April 29. An autopsy was performed by the Lawrence County, Illinois coroner's physician, James Jacobi, on April 29, 2005. The autopsy findings included focal severe coronary artery atherosclerosis of the left circumflex coronary artery with 70% narrowing, severe hepatic steatosis with an estimated liver weight of 3000 grams, and a toxic blood level of Fentanyl of 12.2 nannograms per milliliter (ng/ml). Dr. Jacobi's opinion was that the cause of death was due to a fatal cardiac arrhythmia secondary to focal severe coronary artery atheroscerlsis with a contributing factor of toxic blood level of Fentanyl. The manner of death was determined to be natural.

I was asked by your offices to review the medical and autopsy records to independently determine the cause and manner of death of Mr. Adams.

In my opinion, the cause of death of Mr. Adams was a fatal toxic overdose of Fentanyl due to a known product defect with the 75 microgram Fentanyl packages which was known at approximately that time period and which necessitated a product recall and was the cause of death of other individuals. The manner of death is accidental. Review of the autopsy report and slides indicates that while there was a focal narrowing of the left circumflext coronary artery of approximately 70% narrowing, this was an asymptomatic narrowing in that Mr. Adams did not complain of any chest pain or of atypical anginal symptoms either during exercise or at rest. It is a known pathologic finding that the degree of atherosclerotic narrowing seen at autopsy almost always overestimates the degree of narrowing which would have existed in life in view of the ability of the artery to expand during systole, whereas the post-mortem artery is collapsed. This is particularly true in atheromas which are eccentrically located within the arterial wall, are not calcified, and which are considered more "fatty" than fibrocalcific. Mr. Adams' left circumflex atherosclerotic narrowing fulfilled all of these criteria. In his deposition, Dr. Jacobi also made much of the severe fatty liver as a cause of Mr. Adams elevated level of Fentanyl. Were that the case, then the other pain medications he was taking should also have been elevated; yet they were all either sub-therapeutic or therapeutic in their levels. Review of the autopsy slide of the liver incidates only a moderate, not a severe, degree of fatty infiltration, which was unaccompanied by either co-existent liver disease, such as hepatofibrosis or steatohepatitis, which might be considered to have a potential effect on drug metabolism.. There is no indication that Mr. Adams' liver was not functioning a normal levels at the time of his death.

Exhibit 23

MICHAEL W. KAUFMAN, M.D., LTD.
Department of Pathology
Evanston Hospital
2650 Ridge Avenue
Evanston, Illinois 60201-1783

(847) 570-2753
Fax (847) 570-2927

Carlson - 3

Acting under the assumption that the Fentanyl patch was used in the prescribed fashion by Mrs. Adams, and was not abused, the product manufacturer's package insert indicates that the steady state Fentanyl levels should be 1.7 +/- 0.7 ng/ml. This clearly was exceeded by the postmortem toxicology values obtained by Dr. Jacobi. The blood was drawn from the superior vena cava, eliminating any possible contribution by post-mortem redistribution of drug levels in samples taken either from the inferior vena cava or the right side of the heart. I am in agreement with the opinions expressed by Dr. Jerrold Leikin in regards to the issues of the toxic levels of Fentanyl. Review of the history of the Fentanyl product recall indicates that the levels attained by Mr. Adams were in the range of the fatalities caused by this improperly manufactured product.

In summary, I believe that the cause of death of Mr. Adams was a Fentanyl overdose, possibly compounded by the other pain medications he was taking, even if in therapeutic amounts. I do not believe that his death was due to any cardiac ischemia leading to an arrhythmia from focal coronary artery disease, nor do I blieve that Mr. Adams' moderate steatosis was a cause or contributing factor in his death.

I have enclosed a copy of my current Curriculum Vitae for your file in this case. I have taken the liberty of taking photomicrographs of Mr. Adams' left circumflex coronary artery and liver from the autopsy slides and will send them to you when they are ready.

Please do not hesitate to contact me if there are any questions about this report.

Sincerely,

Michael W. Kaufman, M.D.

Exhibit 23